

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00095-CV

**IN THE INTEREST OF N.B.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-00469
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Jason Pulliam, Justice

Delivered and Filed:  July 22, 2015

AFFIRMED

This is an accelerated appeal from the trial court's order terminating appellant father's ("Father") and appellant mother's ("Mother") parental rights to their child, N.B.  Father and Mother separately appeal the trial court's order; however, neither parent challenges the sufficiency of the evidence to support the trial court's findings relating to the statutory grounds for termination. Rather, both parents contend the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the child.  We affirm the trial court's order of termination.

### BACKGROUND

The record reveals the Texas Department of Family and Protective Services ("the Department") initially became involved in the underlying matter after receiving reports of

domestic violence, substance abuse, and negligent supervision of N.B. When N.B. was nine-months-old, the Department removed N.B. from Father and Mother's home, placing her with "fictive kin," who became N.B.'s foster mother.[1] At that time, the foster mother was caring for N.B.'s half-brother, whom she had previously adopted. According to the record, the Department then started working with Father and Mother for approximately a year, accepting the family into its "Family Based" program. However, Father and Mother were noncompliant with the terms of the program.

After nearly a year of noncompliance, the Department initiated legal proceedings, ultimately seeking to terminate Father's and Mother's parental rights. The Department was granted temporary emergency conservatorship, and service plans were created for the parents. Over the next couple of months, the required statutory hearings were conducted; however, the trial court continually noted Father's and Mother's lack of progress. Throughout this time period, N.B. continued to live with her foster mother.

The case was eventually tried, and the trial court heard testimony from Marilyn LeDay, the Department caseworker assigned to the case, and the foster mother, as well as testimony from Father and Mother. At the conclusion of the trial, the trial court granted the Department's request for termination of both parents' rights to N.B. and rendered an order terminating Father's and Mother's rights, finding termination was in N.B.'s best interest and both parents had violated sections 161.001(1)(C) and (O) of the Texas Family Code ("the Code"). The trial court also found Father had violated section 161.001(P) of the Code. Thereafter, Father and Mother perfected this appeal.

---

[1] "Fictive kinship" is a phrase used to describe family relationships or ties that are based neither consanguinal (blood) nor affinal (by marriage) ties. Wikipedia, https://en.wikipedia.org/wiki/Fictive_kinship (last modified June 25, 2015); *see also Melton v. Tex. Dep't of Family and Protective Servs.*, No. 2010 WL 668917, at *9 (Tex. App.—Austin Feb. 25, 2010, no pet.) (defining "fictive kin" as someone with long-standing and significant relationship with child).

**ANALYSIS**

On appeal, neither Father nor Mother contest the trial court's findings under section 161.001(1) of the Texas Family Code. Rather, Father and Mother both raise the same single issue, arguing the evidence is legally and factually insufficient to support the trial court's finding that termination was in N.B.'s best interest.

***Standard of Review***

In proceedings involving the termination of parental rights, the State must establish one of the grounds listed under subsection (1) of section 161.001 of the Texas Family Code ("the Code") and prove that termination is in the best interest of the child. TEX. FAM. CODE. ANN. § 161.001 (West. 2014); *C.B. v. Tex. Dep't of Family and Protective Servs.*, 440 S.W.3d 756, 767 (Tex. App.—El Paso 2013, no pet.). A termination decision cannot be based on only one of the grounds listed under subsection (1) of section 161.001 of the Code; both elements must be established. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.3d 531, 533 (Tex. 1987); *C.B.*, 440 S.W.3d at 767. Additionally, a court's decision to terminate a parent's rights to his or her children must be supported by clear and convincing evidence. *Id.* § 161.206(a); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App—San Antonio, 2012, pet. denied). "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140. This heightened standard of review is required because termination of a parent's rights to his or her child results in severe and permanent changes to the parent–child relationship, implicating due process. *E.A.G.*, 373 S.W.3d at 140.

In evaluating the evidence for legal sufficiency, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief that the termination was in the best

interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We view all the evidence in the light most favorable to the trial court's finding and judgment, and we resolve any disputed facts in favor of the trial court's findings so long as a reasonable fact finder could have done so. *Id.* We also disregard all evidence a reasonable fact finder could have disbelieved and consider undisputed evidence even if such evidence is contrary to the trial court's findings. *Id.* In sum, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.* We may not weigh a witness's credibility as it depends on the appearance and demeanor of the witness, and such issues are within the domain of the trier of fact. *Id.* Even if credibility issues are found in the appellate record, we must defer to the fact finder's reasonable determinations. *Id.*

In evaluating the evidence for factual sufficiency, we give due deference to the fact finder's findings and avoid substituting that judgment for our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266). Just as in a legal sufficiency review, the determination of a witness's credibility and demeanor is made by a trier of fact, and we cannot second guess the fact finder's resolution of factual disputes. *H.R.M.*, 209 S.W.3d at 109.

### *Best Interests Substantive Law*

There is a strong presumption that maintaining the parent–child relationship is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). At the same time,

however, we also presume that promptly and permanently placing a child in a safe place in a timely manner is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In reviewing the sufficiency of the evidence to support a best interest finding, courts may consider the following nonexclusive factors set forth by the Texas Supreme Court in *Holley v Adams* (collectively, "the *Holley* factors"):

1. the desires of the child;

2. the emotional and physical needs of the child now and in the future;

3. the emotional and physical danger to the child now and in the future;

4. the parental abilities of the individuals seeking custody;

5. the programs available to assist these individuals to promote the best interest of the child;

6. the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement;

7. the acts or omissions of the parent which may indicate that the existing parent–child relationship is not a proper one; and

8. any excuse for the acts or omissions of the parent.

544 S.W.2d 367, 371–72 (Tex. 1976). Evidence is not required on all of the *Holley* factors to support a finding that termination of parental rights is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The absence of evidence as to some of the *Holley* factors does not preclude a trier of fact from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.*

In addition to the *Holley* factors, section 263.307(b) of the Texas Family Code sets out factors to be considered in evaluating whether a parent is willing and able to provide the child with a safe environment, including: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances

of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b); *R.R.*, 209 S.W.3d at 116; *In re A.S.*, No. 04–14–00505–CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.).

Additionally, the same evidence used to prove acts or omissions under section 161.001(1) of the Code may be probative to prove the best interest of the child. *C.H.*, 89 S.W.3d at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)). Moreover, in conducting a best interest analysis, a court may consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to direct evidence. *A.S.*, 2014 WL 5839256, at *2 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). Finally, a fact finder may judge a parent's future conduct by her past conduct in determining whether termination of the parent–child relationship is in the best interest of the child. *Id.*

*Application*

As stated above, Father and Mother contend the evidence is legally and factually insufficient to support the trial court's finding that termination was in N.B.'s best interest. Specifically, Father and Mother argue the Department did not present any evidence establishing that: (1) N.B. did not want to live with Father and Mother, (2) Father or Mother posed a threat to N.B., (3) the Department offered adequate and reasonable assistance to Father and Mother to enable them to comply with their service plans, and (4) Father and Mother did not provide a stable home for N.B. According to Father and Mother, because there was no evidence as to several of the *Holley* factors, there was insufficient evidence to support the trial court's finding that termination was in N.B.'s best interest. We disagree.

As stated above, a court need not find evidence of each *Holley* factor before terminating the parent–child relationship. *See C.H.*, 89 S.W.3d at 27. A court is not prohibited from reasonably forming a strong conviction or belief that termination is in a child's best interest due to a mere absence of evidence as to one or more of the *Holley* factors. *Id.* In this case, despite a lack of evidence as to some of the *Holley* factors, we hold the evidence that does exist is legally and factually sufficient to support the trial court's finding that it was in N.B.'s best interest to terminate Father's and Mother's parental rights.

Here, the record shows N.B. was removed from the home after both parents demonstrated a failure to comply with the "Family Based" program originally provided by the Department. *See* TEX. FAM. CODE ANN. § 263.306(b)(10) (willingness and ability of child's family to seek out, accept, and complete counseling services). Ms. LeDay testified the Department initially became involved with the family due to issues of domestic violence, substance abuse, and neglect. *See* TEX. FAM. CODE ANN. § 263.306(b)(7) (history of abusive or assaultive conduct by child's family); *id.* § 263.306(b)(8) (history of substance abuse by child's family); *Holley*, 544 S.W.2d at 371–72.

After a year and a half of not receiving any cooperation from the parents, the Department sought termination of both parents' rights. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *Holley*, 544 S.W.2d at 371–72.

According to Ms. LeDay, service plans were created and specifically tailored to address the parents' issues. For example, Father was required to submit to drug treatment, but he tested positive for marijuana as recently as January 2015 and did not complete any of the recommended courses for his substance abuse problem, including counseling. *See* TEX. FAM. CODE ANN. § 263.306(b)(8); *id.* § 263.306(b)(10); *Holley*, 544 S.W.2d at 371–72. Father, however, testified that during the "Family Based" program, he went to Lifetime Recovery for drug treatment and was medically discharged. Nevertheless, Father did not provide any testimony as to whether he complied with the service plan created after the child was removed, i.e., the current service plan. There was no evidence regarding whether Father was currently receiving drug treatment or explaining why he failed his recent drug test. Accordingly, in light of Father's testimony, Father's positive drug test in combination with Ms. LeDay's testimony as to his failure to satisfy his most recent service plan are factors in assessing N.B.'s best interest. *See* TEX. FAM. CODE ANN. § 263.306(b)(8); *id.* § 263.306(b)(10); *Holley*, 544 S.W.2d at 371–72.

Furthermore, the evidence shows Father and Mother failed to complete several tasks outlined in their service plans or demonstrate a positive change in their parenting abilities. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11) (willingness and ability of child's family to effect positive environmental and personal changes within reasonable time period); *Holley*, 544 S.W.2d at 371–72. In fact, Ms. LeDay characterized Father's and Mother's course of conduct throughout this case as "noncomplian[t]" when describing Father and Mother's lack of participation in fulfilling the service plans designed for them. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. LeDay testified

neither Father nor Mother completed therapeutic counseling sessions or educational services designed to reduce their risk of returning to their past lifestyle of domestic violence and substance abuse. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72. In response to Ms. LeDay's testimony, Father points out he obtained individual counseling on his own and was successfully discharged from such counseling, demonstrating an ability to seek professional help. Similarly, Mother indicated she found a therapist, but the Department did not provide her with reasonable or adequate assistance to enable her to attend sessions with the chosen therapist, instead requiring her to see a therapist chosen by the Department.

After reviewing the record, however, it is clear Father and Mother did not comply with the service plan requirements or utilize the resources provided by the Department in a timely manner. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. LeDay testified she attempted to work with Father to secure his paperwork releasing him from his individual counselor. Ms. LeDay testified she repeatedly asked Father for his individual counselor's information in an effort to confirm Father was successfully discharged, but he failed to supply her with the contact information in a timely fashion. When Ms. LeDay finally received the contact information, she contacted Father's individual counselor, who indicated she was waiting on documents from the Department to fill out. According to Ms. LeDay, Father was supplied with this paperwork for his individual counselor to complete early in the case. In light of this apparent mix up, Ms. LeDay added that even if the paperwork was timely completed and received, the Department would not have approved it because Father's counselor was a mental health counselor as opposed to an individual therapeutic counselor as required by the Department. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72.

With regard to Mother's noncompliance, Ms. LeDay testified Mother was referred to Sage Counseling services, and only after failing to attend several counseling sessions, Mother voiced her desire for a new counselor. Ms. LeDay testified Mother attended only one counseling session, and between September 2014 and January 2015, Mother did not attend any counseling sessions despite the fact she could have utilized other services provided by the Department if she did not like the recommended counselor. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. LeDay further explained that Mother voiced her desire to change counselors extremely late in the process, demonstrating her lack of interest in fulfilling her requirements in a timely manner. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72. Accordingly, the record reflects both parents failed to satisfy the therapeutic counseling component of their service plans, and instead attempted to seek counseling on their own terms without working with the Department. *See* TEX. FAM. CODE ANN. § 263.306(b)(10); *id.* § 263.306(b)(11); *Holley*, 544 S.W.2d at 371–72.

With regard to N.B.'s needs, N.B. is currently three-years-old and living with a foster mother; she is well cared for. *See* TEX. FAM. CODE ANN. § 263.306(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72 (emotional and physical needs to child now and in future). Both parents contend no evidence was presented as to N.B.'s desires with regard to conservatorship; however, N.B. was only three-years-old at the time of trial and too young to express such desires. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Holley*, 544 S.W.2d at 371–72. When a child is too young to express his or her desires, a trial court may instead consider whether a child has bonded with his or her foster family and is well cared for by them. *J.D.*, 436 S.W.3d at 118. Here, the foster mother testified she began caring for N.B. when N.B. was nine-months-old, and her home is the only home N.B.

knows. *See id.* She also testified N.B. calls her "mommy" and does not have a parental bond with Father or Mother. *See id.*

The foster mother also added that when N.B. was placed with her, neither parent showed any immediate interest in visiting N.B. and did not visit her until two or three months after placement. *See* TEX. FAM. CODE ANN. § 263.306(b)(11; *J.D.*, 436 S.W.3d at 118; *Holley*, 544 S.W.2d at 371–72. When Mother finally visited N.B., she brought age-inappropriate clothing and toys for N.B., demonstrating her lack of knowledge with regard to N.B.'s needs. *See* TEX. FAM. CODE ANN. § 263.306(b)(12) (whether parent shows parenting skills); *Holley*, 544 S.W.2d at 371–72. The foster mother ultimately opined that she did not feel Mother had any "mother[ly] instinct to want to do for [her] child." *See J.D.*, 436 S.W.3d at 118; *Holley*, 544 S.W.2d at 371–72. In fact, even now, Mother shows little interest in N.B.

With regard to Father's interest in N.B., the foster mother testified Father visited N.B., yet was often late, having to rely on the bus for transportation. The foster mother added that Father was inappropriate with N.B. several times, kissing her with an open mouth and placing her on his lap with his pants unbuttoned. *See Holley*, 544 S.W.2d at 371–72. Each incident was reported to the Department.

Moreover, N.B. has a number of medical issues, and at this time, she receives occupational therapy, physical therapy, and speech therapy. *See* TEX. FAM. CODE ANN. § 263.306(b)(1) (child's physical vulnerabilities); *Holley*, 544 S.W.2d at 371–72. According to Ms. LeDay, neither parent actively participates in any of N.B.'s medical appointments despite the fact each of them are permitted to attend these appointments. *See Holley*, 544 S.W.2d at 371–72. The foster mother confirmed the parents' lack of interest in N.B's medical issues, testifying she has repeatedly asked the parents to come to visit N.B. and attend her therapy appointments. *See id.* On cross examination, the foster mother stated that with regard to N.B.'s various therapies, she shared

appointment locations, times, and dates with both parents, but neither ever attended a single appointment. *See id*. The foster mother voiced her concern with regard to Mother's and Father's abilities to keep up with N.B.'s medical appointments and therapy needs. *See id.* Neither parent provided testimony regarding how often they visited N.B. or attended medical appointments.

Because the trial court was permitted to consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, we hold the trial court was within its discretion in finding termination of Father's and Mother's parental rights was in N.B.'s best interest. *See A.S.*, 2014 WL 5839256, at *2. The record shows the Department worked with Father and Mother for a year and a half before seeking termination of their parental rights. And, despite the Department's attempt to provide services to Father and Mother, both of them failed to comply with the programs set out in their plans of service. Although Father and Mother presented some evidence indicating a desire to be reunited with N.B. (i.e., visiting N.B. and attempting to complete counseling), their inability to complete their service plans in a timely manner or show a willingness to effect positive and personal changes for N.B.'s benefit demonstrates that termination is in N.B.'s best interest. In addition to Father's and Mother's noncompliance, the evidence also establishes N.B. is currently well cared for by her current foster parent, who has the ability to continue to provide N.B. with a safe environment. Therefore, we hold the evidence is such that the trial court could have reasonably formed a firm belief or conviction that termination was in the child's best interest. *See J.P.B.*, 180 S.W.3d at 573.

## CONCLUSION

Based on the foregoing, we hold the trial court did not err in finding that termination of Father's and Mother's parental rights was in N.B.'s best interest because the evidence was legally

and factually sufficient to support the trial court's finding.  Therefore, we overrule Father's and Mother's sole appellate issue and affirm the trial court's order of termination.

Marialyn Barnard, Justice